# EXHIBIT A

1  Stanley L. Friedman (CA SBN 120551)
   445 S. Figueroa Street, 31st Floor
2  Los Angeles, California 90071
   Telephone No. (213) 629-1500
3  Facsimile No. (213) 232-4071
   E-mail: friedman@friedmanlaw.org
4
   Attorney for Plaintiffs
5  CALIFORNIA MEDICAL TRANSPORTATION
   ASSOCIATION, INC. and DIANA BULGARELLI
6

**FILED**
Superior Court of California
County of Los Angeles

SEP 12 2017

Sherri R. Carter, Executive Officer/Clerk
By _____, Deputy
    Marion Gomez

90012
A6029          574 COURT

8            SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                      COUNTY OF LOS ANGELES

10                                                    BC675753

11  CALIFORNIA MEDICAL TRANSPORTATION    ) Case No. _____
    ASSOCIATION, INC., a California Corporation;  )
    DIANA BULGARELLI, an Individual,           ) **COMPLAINT FOR VIOLATIONS OF**
12                                                   ) **BUSINESS & PROFESSIONS CODE §**
               Plaintiffs,           ) **17200; INJUNCTIVE AND**
13                                                   ) **DECLARATORY RELIEF**
         vs.                                )
14                                                   )
    LOGISTICARE SOLUTIONS, LLC and DOES 1 )
15  through 20, inclusive,                          )
                        )
16              Defendants.        )
                        )
17  _____ )

18

19

20

21

22

23

24

25

26

27

28

CIT/CASE:  BC675753
LEA/DEF#:
RECEIPT #:  CCH621759045
DATE PAID:  09/12/17  10:47 AM
PAYMENT:  $435.00          310
RECEIVED:
  CHECK:                 $435.00
  CASH:                   $0.00
  CHANGE:                 $0.00
  CARD:                   $0.00

09/12/2017

1

Complaint for Injunctive and Declaratory Relief

1    Plaintiffs CALIFORNIA MEDICAL TRANSPORTATION ASSOCIATION, INC., a

2  California Corporation and DIANA BULGARELLI, an Individual, complain of defendant

3  LOGISTICARE SOLUTIONS, LLC ("LOGISTICARE") and DOES 1 through 20, inclusive, as

4  follows.

5

6                        **JURISDICTION AND VENUE**

7        1.      Plaintiff CALIFORNIA MEDICAL TRANSPORTATION ASSOCIATION, INC.

8  ("CMTA") was founded in 1978 and is a nonprofit organization whose mission is to serve and

9  protect the needs of its members in the non-emergency medical transportation industry

10  ("NEMT").  CMTA represents all NEMT providers in the State of California.  CMTA advocates

11  for the highest quality of patient care through ethical and sound business practices, advancing the

12  interests of its members in important legislative, educational, regulatory and reimbursement

13  issues.  In accomplishing this goal, CMTA is dedicated to excellence in providing superior service

14  to its members and in developing positive relationships with other organizations involved in the

15  medical transportation field.

16        2.      CMTA is a corporate citizen and resident of the State of California, and sues herein

17  on its own behalf, in its own interest, and in the interest of its members, as well as also on behalf

18  of the public of the State of California, and of the Medi-Cal beneficiary patients of the members

19  of CMTA, to procure the performance of public duty by the defendant public officials.

20        3.      CMTA also sues in a prudential *jus tertii* capacity to assert (1) the interests of its

21  members, each of whom is a NEMT provider in the Medi-Cal program as well as (2) the interests

22  of the Medi-Cal patients of the members of CMTA, in the claims which are sued upon and sought

23  in this complaint.

24        4.      All of the members of CMTA are Medi-Cal providers suffering a concrete

25  economic injury by the unlawful actions of LOGISTICARE.  CMTA, as well as the NEMT

26  provider members of CMTA, and the Medi-Cal beneficiary patients of the NEMT provider

27  members of  CMTA, on whose behalf CMTA sues herein, also have standing and a claim for

28

Complaint for Injunctive and Declaratory Relief

1  relief inasmuch as each has suffered, will suffer, and is threatened to suffer, concrete and

2  irreparable injury.

3      5.    Medi-Cal beneficiaries face economic hindrances to their ability to assert their own

4  rights in this case.  To qualify for Medi-Cal, an individual must demonstrate financial need for

5  medical assistance from the State.  In light of their finances and the cost of litigation, Medi-Cal

6  beneficiaries are not be able to effectively protect their interests.

7      6.    CMTA, which represents its members that participate in the Medi-Cal program and

8  the Medi-Cal beneficiaries served by these providers, and as parties seeking to compel

9  LOGISTICARE to comply with its public duties as defined by law, has a right and an enforceable

10 interest to maintain this action to: (1) enjoin the Defendants' continuing violation of federal, state

11 and local laws; and (2) compel the Defendants to comply with provisions of applicable federal,

12 state and local laws.

13     7.    CMTA has a right and an enforceable interest to maintain this action against

14 LOGISTICARE to enjoin it from continuing violation of Medi-Cal law and to compel it to

15 comply with the provisions of applicable Medi-Cal law.

16     8.    DIANA BULGARELLI ("MS. BULGARELLI") is a Medi-Cal beneficiary who

17 uses NEMT services to get to her medical appointments.

18     9.    In 2014, LOGISTICARE became the exclusive provider of NEMT for millions of

19 Los Angeles County residents enrolled in certain Medi-Cal health plans.  In contracting to become

20 the exclusive provider for Medi-Cal patients, LOGISTICARE committed to provide services with

21 the same standard of care, skill, and diligence customarily used by other Los Angeles County

22 providers, and to comply with all applicable federal, state, county, and local laws and regulations.

23     10.   The true names or capacities, whether individual, corporate, associate, or otherwise

24 of defendants named in this action as Does 1 through 20 are unknown to Plaintiffs, who therefore

25 sue such defendants by such fictitious names.  Plaintiffs will seek leave of this Honorable Court to

26 amend this Complaint when the true names and/or capacities of said defendants have been

27 ascertained.

28

Complaint for Injunctive and Declaratory Relief

11.     Each of the named defendants and each of the fictitiously named DOE defendants, was the agent, or employee, partner or officer, director or joint venturer of defendants herein, and doing the things herein alleged was acting within the course and scope of said agency, employment, partnership, joint venture, or association and under the direction of, and with the consent and permission, advance knowledge and/or ratification of the other defendants.

12.     Venue lies in this judicial district in that LOGISTICARE contracts to provide, and does provide, NEMT rides to numerous locations within this judicial district, and has been warned by the City of Los Angeles Department of Transportation, located at 100 S. Main Street, Los Angeles, CA 90012, that it may not implement its own rate structure in violation of Ordinance 182502, and is thus deemed to both conduct business and reside within this judicial district and also in that Plaintiffs or their members are located and reside within this judicial district and the consequences of LOGISTICARE's unlawful activities are occurring within this judicial district.

## CALIFORNIA'S MEDI-CAL PROGRAM

13.     The State of California has elected to participate in the Medicaid program. California has named its program "Medi-Cal." *See California Welfare & Institutions Code* §§ 14000 *et seq.*; 22 California Code of Regulations ("C.C.R.") §§ 50000 *et seq.*[1]

14.     California's Medicaid program, Medi-Cal, is the largest state Medicaid program in the nation.  Insuring almost one-third of California's more than 38 million residents, Medi-Cal is a key source of health coverage in the state and the main source of coverage for low-income children, adults, and people with disabilities.  It also provides wrap-around coverage for many elderly Medicare beneficiaries in the state.

15.     The California Department of Health Care Services ("DHCS") awards contracts to health plans to serve Medi-Cal beneficiaries in a specified county or service area.  Today, approximately 10.3 million Medi-Cal beneficiaries in all 58 California counties are enrolled in Medi-Cal managed care plans ("MCP").

16.     Each MCP receives a monthly fee, or per capita rate, from the state for every

---

[1]California Code of Regulations is herein abbreviated as "CCR."

Complaint for Injunctive and Declaratory Relief

1   enrolled recipient.  Medi-Cal recipients enrolled in contracting MCPs must receive Medi-Cal

2   benefits from plan providers and not from providers who bill through the fee-for-service program.

3   Each MCP is unique in its billing and service procedures.

4        17.    Medi-Cal covers ambulance and other medical transportation only when ordinary

5   public or private conveyance is medically contra-indicated and transportation is required for

6   obtaining needed medical care.

7        18.    LOGISTICARE is a Transportation Management Organization that has been

8   contracted by MCPs as a broker to provide NEMT throughout California and has the exclusive

9   contract in Los Angeles County.

10

11   **NONEMERGENCY MEDICAL TRANSPORTATION**

12   **A.    Nonemergency Medical Transportation.**

13        19.    State regulations define NEMT as "transportation by ambulance, litter van and

14   wheelchair van of the sick, injured, invalid, convalescent, infirm or otherwise incapacitated

15   persons whose medical conditions require medical transportation services but do not require

16   emergency services or equipment during transport" (22 CCR § 51151.7).  These transportation

17   services allow Medi-Cal beneficiaries to obtain needed medical care.

18        20.    According to State regulations: "Ambulance, litter van and wheelchair van medical

19   transportation services are covered when the beneficiary's medical and physical condition is such

20   that transport by ordinary means of public or private conveyance is medically contraindicated, and

21   transportation is required for the purpose of obtaining needed medical care" (22 CCR §

22   51323(a)).

23        21.    NEMT services necessary to obtain services under Medicaid generally require a

24   physician's, dentist's, or podiatrist's prescription and prior authorization (22 CCR §

25   51323(b)(2)).  However, NEMT services are exempt from prior authorization when provided to a

26   patient being transferred from an acute-care hospital immediately following a stay as an inpatient

27   at the acute level of care to a skilled nursing facility or an intermediate-care facility.

28   Transportation providers obtain prior authorization by submitting a treatment authorization

Complaint for Injunctive and Declaratory Relief

request (TAR) to the State agency (22 CCR § 51003(a)). The TAR contains information necessary for the State agency to determine the medical necessity of the NEMT services.  If the TAR is approved, the transportation provider is authorized to provide approved NEMT services to the beneficiary and receive reimbursement from the State agency for those services.

22.      The State agency pays for NEMT services if transportation is required for beneficiaries to obtain needed medical care (22 CCR § 51323(a)).

23.      Transportation providers that use wheelchair vans to provide NEMT services must maintain records indicating that their drivers comply with State requirements to operate those vehicles.  Wheelchair van drivers must possess a current California driver's license, first aid certification, and evidence that they passed a medical examination within the past 2 years (22 CCR §§ 51231.1(a)(1) and 51231.2(a)(1)).

**B.**     **Definitions.**

24.      "Wheelchair Van" means a vehicle which is modified, equipped and used for the purpose of providing non-emergency medical transportation for wheelchair van medical passengers, and which is not routinely staffed or equipped with the medical equipment or personnel required for the specialized care provided in an ambulance.

25.      "Wheelchair Van Medical Passenger" means a passenger whose condition is such that the passenger may be transported seated in a wheelchair.  The passenger must be able to sit erect, hold his/her head up, maintain an open airway without assistance, can self-administer any medical care needed en-route.  MCPs must provide wheelchair van services when the member's medical and physical condition does not meet the need for litter van services, but meets any of the following:

a.      Renders the member incapable of sitting in a private vehicle, taxi or other form of public transportation for the period of time needed to transport. (22 CCR § 51323 (3)(A))

b.   Requires that the member be transported in a wheelchair or assisted to and from a residence, vehicle and place of treatment because of a disabling physical or mental limitation.  (22 CCR § 51323 (3)(B)).

c.   Requires specialized safety equipment over and above that normally available in passenger cars, taxicabs or other forms of public conveyance.  (22 CCR § 51323 (3)[c].

26.   Examples of members who qualify for wheelchair van transport include, but are not limited to, the following: Members who suffer from severe mental confusion; Members with paraplegia; Dialysis recipients; and Members with chronic conditions who require oxygen but do not require monitoring.

**C.   Equipment.**

27.   Each Wheelchair Van is required to be equipped in accordance with 22 CCR § 51231.2.

**D.   Personnel Requirements.**

b.   Wheelchair Van Personnel must be staffed in accordance with 22 CCR § 51231.2;

c.   Drivers and Attendants of Wheelchair Vans must be at least eighteen (18) years of age and hold an appropriate valid California Driver's License;

d.   Drivers and Attendants of Wheelchair Vans must hold a current certificate in CPR, and demonstrate compliance with all applicable state and local laws and regulations;

e.   Personnel must wear visible identification including the employee's name and the name of the Transportation Entity; and

f.   No person shall act in the capacity of a Wheelchair Van Driver or Attendant when such person:

i.      is required by law to register as a sex offender for any offense involving force, duress, threat or intimidation;

ii.     habitually or excessively uses or is addicted to narcotics or dangerous drugs, or has been convicted during the preceding seven (7) years of any felony offense relating to the use, sale, possession or transportation of narcotics, addictive or dangerous drugs, or alcohol; or

iii.    habitually or excessively uses intoxicating beverages.

**E.**    **Documentation Requirements.**

28.    Medical transportation providers must maintain readily retrievable records to fully disclose the type and extent of services provided (22 CCR § 51476).

29.    Medical transportation providers must follow federal and state requirements for maintaining supporting documentation for drivers and vehicles associated with medical transportation services (22 CCR §§ 51476, 51231, 51231.1 and 51231.2).

30.    Medical transportation providers' records must include the provider-assigned vehicle identification codes (22 CCR § 51476(e)(3)) identifying the vehicles used to transport Medicaid beneficiaries.

31.    State regulations (22 CCR §§ 51476(e)) require that records of medical transportation providers shall include:

a.    time and date of service for each beneficiary;

b.    odometer readings at each pick-up and delivery location;

c.    the provider assigned vehicle identification code and name of the operator providing the service; and

d.    names of beneficiaries transported in total or partial group runs.

//
//
//

Complaint for Injunctive and Declaratory Relief

**F.      NEMT Physician Certification Statement Forms.**

32.     MCPs and transportation brokers must use Physician Certification Statement (PCS) forms to determine the appropriate level of service for Medi-Cal members. Once the member's treating physician prescribes the form of transportation, the MCP cannot modify the authorization.  In order to ensure consistency amongst all plans, all NEMT prescription forms must include, at a minimum, the PCS form components listed below:

    a.     Function Limitations Justification: for NEMT, the physician is required to document the member's limitations and provide specific physical and medical limitations that preclude the member's ability to reasonably ambulate with assistance or be transported by public or private vehicles;

    b.     Dates of Service Needed: start and end dates for NEMT services;

    c.     Mode of Transportation Needed: the mode of the transportation that is to be used when receiving these services (ambulance/gurney van, litter van, wheelchair van or air transport) must be listed; and

    d.     Certification Statement: prescribing physician's statement certifying that medical necessity was used to determine the type of transportation being requested."

**G.      Nonmedical Transportation – July 1, 2017 Amendment to Welfare & Institutions Code § 14132.**

33.     On July 1, 2017, Assembly Bill 2394 (a copy of which is attached hereto as Exhibit "A") amended Welfare & Institutions Code § 14132 to "add to the schedule of benefits nonmedical transportation as defined, subject to utilization controls and permissible time and distance standards, for a beneficiary to obtain covered Medi-Cal services."[2]

34.     Welfare & Institutions Code § 14132, as amended, in subsection (ad)(2)(A)(ii) states as follows: "Nonmedical transportation _does_ _not_ _include_ the transportation of sick, injured, invalid, convalescent, infirm, or otherwise incapacitated beneficiaries by ambulances, litter vans, or _wheelchair vans_ licensed, operated, and equipped in accordance with state and local statutes, ordinances, or regulations."  [Emphasis added.]

---

[2]  Nonmedical transportation shall hereinafter be referred to as "NMT."

9

35.    In regard to implementation, Assembly Bill 2394 stated that "the department, without taking any further regulatory action, shall implement, interpret, or make specific this subdivision by means of all-county letters, plan letters, plan or provider bulletins, or similar instructions until the time regulations are adopted."

36.    In response to the implementation requirement, on July 17, 2017, the Department of Health Care Services, issued a revised All Plan Letter ("APL") 17-010, a copy of which is attached hereto as Exhibit "B," and in regard to transportation of wheel chair patients, stated as follows:

"NMT does not include transportation of the sick, injured, invalid, convalescent, infirm, or otherwise incapacitated members who need to be transported by ambulances, litter vans, or wheelchair vans licensed, operated, and equipped in accordance with state and local statutes, ordinances, or regulations. *Physicians may authorize NMT for members if they are currently using a wheelchair but the limitation is such that the member is able to ambulate without assistance from the driver*. The NMT requested must be the least costly method of transportation that meets the member's needs." [Emphasis added.]

37.    On July 31, 2017, the Department of Health Care Services gave further guidance regarding transportation for wheelchair patients when, in response to an inquiry from Assembly Member Adrin Nazarian, it stated:

"NMT does not include transportation of the sick, injured, invalid, convalescent, infirm, or otherwise incapacitated members who need to be transported by ambulances, litter vans, or wheelchair vans licensed, operated, and equipped in accordance with state and local statutes, ordinances, or regulations. *Physicians may authorize NMT for members if they are currently using a wheelchair but the limitation is such that the member is able to ambulate without assistance from the driver*. The NMT requested must be the least costly method of transportation that meets the member's needs.

. . .

NMT does not include medical transportation of the sick, injured, invalid, convalescent, infirm, or incapacitated." [Emphasis added.]

10

Complaint for Injunctive and Declaratory Relief

1  A copy of the July 31, 2017 response is attached hereto as Exhibit "C."

2
                              **FIRST CAUSE OF ACTION:**
3                   **UNLAWFUL BUSINESS ACTS AND PRACTICES**
                     **[BUS. & PROF. CODE § 17200, ET SEQ.]**
4                      **(BY PLAINTIFFS AGAINST DEFENDANTS)**

5       38.     Plaintiffs refer to and incorporate by reference each and every allegation contained

6  in the above paragraphs as though fully set forth herein.

7       39.     Because LOGISTICARE is paid on a capitated rate (i.e., flat fee) for providing

8  services to Medi-Cal patients, there is a strong incentive to cut costs.

9       40.     Title 22 CCR § 51527, which relates to the rates for medical transportation

10  services, specifies that, in regard to Wheelchair Vans, NEMT providers are to be paid specified

11  rates, including: $17.65 for a "response to call;" $1.30 for "one way - per mile;" $6.13 for a "night

12  call -7:00 p.m. to 7:00 a.m.;" and $0.89 for "wheelchair use." These figures were adjusted

13  downwards by 10% from the standard rates as part of the state deficit reduction program. *See*

14  Welf. & Inst. Code § 14105.192. However, LOGISTICARE ignores these rates set by the

15  Legislature and has a pattern and practice of threatening NEMT providers that, unless they accept

16  progressively lower and lower rates, LOGISTICARE will not send any additional rides to

17  non-complying NEMT providers and will send the rides to other NEMT providers. By doing so,

18  LOGISTICARE violates California law, ignores the intent of the Legislature, and unlawfully

19  coerces NEMT providers to accept rates well below those approved by the Legislature which

20  jeopardizes the health and safety of Medi-Cal beneficiaries, and increases their risk of injury and

21  death, especially those Medi-Cal beneficiaries who need regular dialysis treatments.

22       41.     By engaging in the conduct specified in paragraph 40, above, namely demanding

23  "discounts" from NEMT providers, LOGISTICARE further violates Title 22 CCR § 51478, which

24  relates to "Prohibition of Rebate, Refund, or Discount," and states as follows:

25       "No provider shall offer, give, furnish, or deliver any rebate, refund, commission

26       preference, patronage dividend, *discount*, or any other gratuitous consideration, in

27       connection with the rendering of health care service to any Medi-Cal beneficiary. No

28       provider shall solicit, request, accept, or receive, any rebate, refund, commission,

                                            11

preference, patronage dividend, *discount*, or any other gratuitous consideration, in connection with the rendering of health care service to any Medi-Cal beneficiary."

[Emphasis added.]

42.     Business & Professions Code Section 17200, *et seq.*, prohibits acts of "unfair competition," which is defined by Business & Professions Code Section 17200 as including "any unlawful, unfair or fraudulent business act or practice."

43.     The acts and practices of Defendants, as described above, and specifically LOGISTICARE's continued violation of 22 CCR § 51527 and Title 22 CCR § 51478 violate Business & Professions Code Section 17200's prohibition against engaging in "unlawful" business acts or practices.

44.     Plaintiffs seek declaratory relief enjoining Defendants from continuing these unlawful business practices and from engaging in such conduct, attorneys' fees and costs pursuant to, *inter alia*, California Civil Code of Procedure Section 1021.5, and all other remedies.

**SECOND CAUSE OF ACTION:**
**UNLAWFUL BUSINESS ACTS AND PRACTICES**
**[BUS. & PROF. CODE § 17200, ET SEQ.]**
**(BY PLAINTIFFS AGAINST DEFENDANTS)**

45.     Plaintiffs refer to and incorporate by reference each and every allegation contained in the above paragraphs as though fully set forth herein.

46.     Because LOGISTICARE is paid on a capitated rate (i.e., flat fee) for providing services to Medi-Cal patients, there is a strong incentive to cut costs.

47.     City of Los Angeles Ordinance Number 182502 states as follows:

"Any person, firm or corporation violating any of the provisions of said resolution shall be guilty of a misdemeanor and upon conviction shall be punishable by a fine of not more than One Thousand Dollars ($1,000.00), by imprisonment in the County Jail for a period not to exceed one hundred eighty (180) days, or by both such fine and imprisonment."

48.     City of Los Angeles Ordinance Number 182502, which relates to the rates for medical transportation services, specifies that, in regard to Wheelchair Vans, NEMT providers are to be paid specified rates, including: $37.25 for a "response to call;" $3.50 for "each mile or

12

1  fraction thereof;" $14.50 for "service rendered after 7:00 p.m. and before 7:00 a.m.;" and $8.25 for

2  "wheelchair use."

3      49.     On March 15, 2017, the City of Los Angeles, sent a letter to LOGISTICARE

4  calling its attention to Ordinance Number 182502 and the current rates set forth in said Ordinance.

5  A copy of this letter from the City of Los Angeles to LOGISTICARE is attached hereto as Exhibit

6  D and incorporated by reference.

7      50.     LOGISTICARE ignores these rates set by the City of Los Angeles and has a

8  pattern and practice of threatening NEMT providers operating in the City of Los Angeles that,

9  unless they accept progressively lower and lower rates, LOGISTICARE will not send any

10  additional rides to non-complying NEMT providers and will send the rides to other NEMT

11  providers.  By doing so, LOGISTICARE acts unlawfully and unlawfully coerces NEMT providers

12  to accept rates well below those approved by the City of Los Angeles which jeopardizes the health

13  and safety of Medi-Cal beneficiaries who live in, and receive Medi-Cal services within, the City

14  of Los Angeles, and increases their risk of injury and death, especially those Medi-Cal

15  beneficiaries who need regular dialysis treatments.

16      51.     Business & Professions Code Section 17200, *et seq.*, prohibits acts of "unfair

17  competition," which is defined by Business & Professions Code Section 17200 as including "any

18  unlawful, unfair or fraudulent business act or practice."

19      52.     The acts and practices of Defendants, as described above, and specifically the

20  continued violation of City of Los Angeles Ordinance Number 182502 violates Business &

21  Professions Code Section 17200's prohibition against engaging in "unlawful" business acts or

22  practices.

23      53.     Plaintiffs seek declaratory relief enjoining Defendants from continuing these

24  unlawful business practices and from engaging in such conduct, attorneys' fees and costs

25  pursuant to, *inter alia*, California Civil Code of Procedure Section 1021.5, and all other remedies.

26  //

27  //

28  //

Complaint for Injunctive and Declaratory Relief

## THIRD CAUSE OF ACTION:
## UNLAWFUL BUSINESS ACTS AND PRACTICES
## [BUS. & PROF. CODE § 17200, ET SEQ.]
## (BY PLAINTIFFS AGAINST DEFENDANTS)

54.     Plaintiffs refer to and incorporate by reference each and every allegation contained in the above paragraphs as though fully set forth herein.

55.     Because LOGISTICARE is paid on a capitated rate (i.e., flat fee) for providing services to Medi-Cal patients, there is a strong incentive to cut costs.

56.     When a Medi-Cal beneficiary who previously was qualified for, and used NEMT services on a fee-for service basis has been switched to LOGISTICARE, there is a gap of up to two weeks prior to the time that LOGISTICARE opens a file in regard to the beneficiary and during this time period LOGISTICARE will not pay (even retroactively) for transportation services despite it being paid for this time period and having an obligation to do so, and such failure jeopardizes the health and safety of Medi-Cal beneficiaries, and increases their risk of injury and death, especially those Medi-Cal beneficiaries who need regular dialysis treatments.

57.     Business & Professions Code Section 17200, *et seq.*, prohibits acts of "unfair competition," which is defined by Business & Professions Code Section 17200 as including "any unlawful, unfair or fraudulent business act or practice."

58.     The acts and practices of Defendants, as described above, and specifically the failure to provide rides when required to do so violate Business & Professions Code Section 17200's prohibition against engaging in "unlawful" business acts or practices.

59.     Plaintiffs seek declaratory relief enjoining Defendants from continuing these unlawful business practices and from engaging in such conduct, attorneys' fees and costs pursuant to, *inter alia*, California Civil Code of Procedure Section 1021.5, and all other remedies.

## FOURTH CAUSE OF ACTION:
## UNLAWFUL BUSINESS ACTS AND PRACTICES
## [BUS. & PROF. CODE § 17200, ET SEQ.]
## (BY PLAINTIFFS AGAINST DEFENDANTS)

60.     Plaintiffs refer to and incorporate by reference each and every allegation contained in the above paragraphs as though fully set forth herein.

61.     Because LOGISTICARE is paid on a capitated rate (i.e., flat fee) for providing

14

Complaint for Injunctive and Declaratory Relief

1  services to Medi-Cal patients, there is a strong incentive to cut costs.

2       62.    When a Medi-Cal beneficiary who previously was qualified for, and used NEMT

3  services on a fee-for service basis has been switched to LOGISTICARE, and after

4  LOGISTICARE opens a file in regard to the beneficiary, LOGISTICARE ignores the existing

5  PCS form, sends a new PCS form to the treating physician.  In the interim between the time

6  LOGISTICARE sends out the new PCS form and the time it receives it back, LOGISTICARE has

7  a pattern and practice of authorizing only NMT, even when the existing PCS form authorizes

8  NEMT, and such pattern and practice jeopardizes the health and safety of Medi-Cal beneficiaries,

9  and increases their risk of injury and death, especially those Medi-Cal beneficiaries who need

10 regular dialysis treatments.

11      63.    Business & Professions Code Section 17200, *et seq.*, prohibits acts of "unfair

12 competition," which is defined by Business & Professions Code Section 17200 as including "any

13 unlawful, unfair or fraudulent business act or practice."

14      64.    The acts and practices of Defendants, as described above, and specifically the

15 failure to provide rides when required to do so violate Business & Professions Code Section

16 17200's prohibition against engaging in "unlawful" business acts or practices.

17      65.    Plaintiffs seek declaratory relief enjoining Defendants from continuing these

18 unlawful business practices and from engaging in such conduct, attorneys' fees and costs

19 pursuant to, *inter alia*, California Civil Code of Procedure Section 1021.5, and all other remedies.

20                    **FIFTH CAUSE OF ACTION:**
21           **UNLAWFUL BUSINESS ACTS AND PRACTICES**
                  **[BUS. & PROF. CODE § 17200, ET SEQ.]**
22             **(BY PLAINTIFFS AGAINST DEFENDANTS)**

23      66.    Plaintiffs refer to and incorporate by reference each and every allegation contained

24 in the above paragraphs as though fully set forth herein.

25      67.    Because LOGISTICARE is paid on a capitated rate (i.e., flat fee) for providing

26 services to Medi-Cal patients, there is a strong incentive to cut costs.

27      68.    In order to avoid paying for properly-operating NEMT companies, which ensure

28 patient safety and compliance with all state and federal laws, and in violation of Welfare &

1  Institutions Code § 14132(ad)(2)(A)(ii) and APL 17-010 (as amended), LOGISTICARE has

2  coerced doctors, against their medical judgment, into downgrading patient needs from NEMT to

3  NMT by threatening to not provide any transportation to patients unless doctors completed the

4  PCS form to authorize NMT, rather than NEMT.

5      69.    Business & Professions Code Section 17200, *et seq.*, prohibits acts of "unfair

6  competition," which is defined by Business & Professions Code Section 17200 as including "any

7  unlawful, unfair or fraudulent business act or practice."

8      70.    The acts and practices of Defendants, as described above, violate Business &

9  Professions Code Section 17200's prohibition against engaging in "unlawful" business acts or

10  practices.

11      71.    Plaintiffs seek declaratory relief enjoining Defendants from continuing these

12  unlawful business practices and from engaging in such conduct, attorneys' fees and costs

13  pursuant to, *inter alia*, California Civil Code of Procedure Section 1021.5, and all other remedies.

14

15
<div align="center">

**SIXTH CAUSE OF ACTION:**
**UNLAWFUL BUSINESS ACTS AND PRACTICES**
**[BUS. & PROF. CODE § 17200, ET SEQ.]**
**(BY PLAINTIFFS AGAINST DEFENDANTS)**
</div>

16

17      72.    Plaintiffs refer to and incorporate by reference each and every allegation contained

18  in the above paragraphs as though fully set forth herein.

19      73.    Because LOGISTICARE is paid on a capitated rate (i.e., flat fee) for providing

20  services to Medi-Cal patients, there is a strong incentive to cut costs.

21      74.    In order to avoid paying for properly-operating NEMT companies, which ensure

22  patient safety and compliance with all state and federal laws, and in violation of Welfare &

23  Institutions Code § 14132(ad)(2)(A)(ii) and APL 17-010 (as amended), LOGISTICARE has

24  transported Medi-Cal patients ignoring PCS forms (which are used to determine the appropriate

25  level of service for Medi-Cal members) and provided NMT when NEMT had been authorized by

26  the treating physician.

27      75.    Business & Professions Code Section 17200, *et seq.*, prohibits acts of "unfair

28  competition," which is defined by Business & Professions Code Section 17200 as including "any

<div align="center">

16

Complaint for Injunctive and Declaratory Relief
</div>

1  unlawful, unfair or fraudulent business act or practice."

2      76.      The acts and practices of Defendants, as described above, violate Business &

3  Professions Code Section 17200's prohibition against engaging in "unlawful" business acts or

4  practices.

5      77.      Plaintiffs seek declaratory relief enjoining Defendants from continuing these

6  unlawful business practices and from engaging in such conduct, attorneys' fees and costs

7  pursuant to, *inter alia*, California Civil Code of Procedure Section 1021.5, and all other remedies.

8

9                          **SEVENTH CAUSE OF ACTION:**
                    **UNLAWFUL BUSINESS ACTS AND PRACTICES**
                      **[BUS. & PROF. CODE § 17200, ET SEQ.]**
10                      **(BY PLAINTIFFS AGAINST DEFENDANTS)**

11      78.      Plaintiffs refer to and incorporate by reference each and every allegation contained

12  in the above paragraphs as though fully set forth herein.

13      79.      Because LOGISTICARE is paid on a capitated rate (i.e., flat fee) for providing

14  services to Medi-Cal patients, there is a strong incentive to cut costs.  In order to avoid paying for

15  properly-operating NEMT companies, which ensure patient safety and compliance with all state

16  and federal laws, LOGISTICARE has diverted Medi-Cal patients to individuals and companies

17  which are non-compliant, such as taxicabs or Lyft.  Use of non-compliant transportation

18  companies and individuals jeopardize the health and safety of Medi-Cal patients because such

19  patients: require door-to-door service while taxicabs and Lyft provide only curb-to-curb service;

20  and because taxicabs and Lyft do not comply with many state and federal laws which regulate

21  NEMT.

22      80.      Business & Professions Code Section 17200, *et seq.*, prohibits acts of "unfair

23  competition," which is defined by Business & Professions Code Section 17200 as including "any

24  unlawful, unfair or fraudulent business act or practice."

25      81.      The acts and practices of Defendants, as described above, violate Business &

26  Professions Code Section 17200's prohibition against engaging in "unlawful" business acts or

27  practices, by, *inter alia*, providing rides with Lyft and those drivers have not been screened in

28  regard to personnel and driver requirements.

Complaint for Injunctive and Declaratory Relief

82.     Plaintiffs seek declaratory relief enjoining Defendants from continuing these unlawful business practices and from engaging in such conduct, attorneys' fees and costs pursuant to, *inter alia*, California Civil Code of Procedure Section 1021.5, and all other remedies.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1.     For a permanent injunction compelling LOGISTICARE to ensure that:

    a.     LOGISTICARE abides by all state laws in regard to rates paid to NEMT providers and cease its efforts to coerce NEMT providers into accepting unlawfully low rates;

    b.     LOGISTICARE abides by all laws of the City of Los Angeles in regard to rates paid to NEMT providers and cease its efforts to coerce NEMT providers into accepting unlawfully low rates;

    c.     LOGISTICARE is to provide safe, timely, and reliable NEMT to all Medi-Cal patients in Los Angeles County, and throughout the State of California, who have an entitlement to NEMT provided by LOGISTICARE;

    d.     LOGISTICARE is to give effect to PCS forms as completed by physicians and not compel or coerce physicians to order NMT when, in their medical opinion, the proper type of transportation is NEMT;

    e.     all transportation vendors under contract to LOGISTICARE provide safe, timely, and reliable NEMT to all other Medi-Cal patients throughout the State who have an entitlement to NEMT provided by LOGISTICARE;

    f.     LOGISTICARE is to provide services by contracting only with transportation vendors who are in compliance with rigorous standards on passenger safety, customer service, and cultural competency, including serving individuals with disabilities; and

18

Complaint for Injunctive and Declaratory Relief

g.  all drivers for all transportation vendors under contract with LOGISTICARE are to perform their services in compliance with state and federal law.

2.  For the Court's continued supervision over LOGISTICARE's efforts to fulfill the above-identified items and immediate remedies in the event that LOGISTICARE fails to comply with this Court's orders.

3.  For general and special damages according to proof at trial, but in excess of the minimum jurisdictional limits of this court.

4.  For pre- and post-judgment interest.

5.  For restitution.

6.  For costs of suit.

7.  For attorneys' fees as allowed by law including, but not limited to, California Code of Civil Procedure Section 1021.5.

8.  For all other relief the court may deem proper.

Respectfully submitted,

Dated: September 12, 2017.

Stanley L. Friedman
Attorney for Plaintiffs
CALIFORNIA MEDICAL TRANS-
PORTATION ASSOCIATION, INC.,
and DIANA BULGARELLI

19

Complaint for Injunctive and Declaratory Relief

09/15/2017

**Exhibit A**

# Exhibit "A"

Assembly Bill No. 2394

CHAPTER 615

An act to amend Section 14132 of the Welfare and Institutions Code, relating to Medi-Cal.

[Approved by Governor September 25, 2016. Filed with
Secretary of State September 25, 2016.]

LEGISLATIVE COUNSEL'S DIGEST

AB 2394, Eduardo Garcia. Medi-Cal: nonmedical transportation.

Existing law provides for the Medi-Cal program, which is administered by the State Department of Health Care Services, under which qualified low-income individuals receive health care services. The Medi-Cal program is, in part, governed and funded by federal Medicaid Program provisions. Existing law provides for a schedule of benefits under the Medi-Cal program, which includes medical transportation services, subject to utilization controls.

This bill, commencing July 1, 2017, would add to the schedule of benefits nonmedical transportation, as defined, subject to utilization controls and permissible time and distance standards, for a beneficiary to obtain covered Medi-Cal services. The bill would require these provisions to be implemented only to the extent that federal financial participation is available, and not otherwise jeopardized, and any necessary federal approvals are obtained. The bill would specify that these provisions shall not be interpreted to add a new benefit to the Medi-Cal program, except as provided. The bill would require the department to adopt regulations by July 1, 2018. Commencing January 1, 2018, the bill would require the department to provide a status report to the Legislature on a semiannual basis until regulations have been adopted.

*The people of the State of California do enact as follows:*

SECTION 1.   Section 14132 of the Welfare and Institutions Code is amended to read:

14132.   The following is the schedule of benefits under this chapter:

(a)   Outpatient services are covered as follows:

Physician, hospital or clinic outpatient, surgical center, respiratory care, optometric, chiropractic, psychology, podiatric, occupational therapy, physical therapy, speech therapy, audiology, acupuncture to the extent federal matching funds are provided for acupuncture, and services of persons rendering treatment by prayer or healing by spiritual means in the practice of any church or religious denomination insofar as these can be encompassed



2

by federal participation under an approved plan, subject to utilization controls.

(b) (1) Inpatient hospital services, including, but not limited to, physician and podiatric services, physical therapy and occupational therapy, are covered subject to utilization controls.

(2) For Medi-Cal fee-for-service beneficiaries, emergency services and care that are necessary for the treatment of an emergency medical condition and medical care directly related to the emergency medical condition. This paragraph shall not be construed to change the obligation of Medi-Cal managed care plans to provide emergency services and care. For the purposes of this paragraph, "emergency services and care" and "emergency medical condition" shall have the same meanings as those terms are defined in Section 1317.1 of the Health and Safety Code.

(c) Nursing facility services, subacute care services, and services provided by any category of intermediate care facility for the developmentally disabled, including podiatry, physician, nurse practitioner services, and prescribed drugs, as described in subdivision (d), are covered subject to utilization controls. Respiratory care, physical therapy, occupational therapy, speech therapy, and audiology services for patients in nursing facilities and any category of intermediate care facility for the developmentally disabled are covered subject to utilization controls.

(d) (1) Purchase of prescribed drugs is covered subject to the Medi-Cal List of Contract Drugs and utilization controls.

(2) Purchase of drugs used to treat erectile dysfunction or any off-label uses of those drugs are covered only to the extent that federal financial participation is available.

(3) (A) To the extent required by federal law, the purchase of outpatient prescribed drugs, for which the prescription is executed by a prescriber in written, nonelectronic form on or after April 1, 2008, is covered only when executed on a tamper resistant prescription form. The implementation of this paragraph shall conform to the guidance issued by the federal Centers for Medicare and Medicaid Services but shall not conflict with state statutes on the characteristics of tamper resistant prescriptions for controlled substances, including Section 11162.1 of the Health and Safety Code. The department shall provide providers and beneficiaries with as much flexibility in implementing these rules as allowed by the federal government. The department shall notify and consult with appropriate stakeholders in implementing, interpreting, or making specific this paragraph.

(B) Notwithstanding Chapter 3.5 (commencing with Section 11340) of Part 1 of Division 3 of Title 2 of the Government Code, the department may take the actions specified in subparagraph (A) by means of a provider bulletin or notice, policy letter, or other similar instructions without taking regulatory action.

(4) (A) (i) For the purposes of this paragraph, nonlegend has the same meaning as defined in subdivision (a) of Section 14105.45.

22



3

(ii) Nonlegend acetaminophen-containing products, with the exception of children's acetaminophen-containing products, selected by the department are not covered benefits.

(iii) Nonlegend cough and cold products selected by the department are not covered benefits. This clause shall be implemented on the first day of the first calendar month following 90 days after the effective date of the act that added this clause, or on the first day of the first calendar month following 60 days after the date the department secures all necessary federal approvals to implement this section, whichever is later.

(iv) Beneficiaries under the Early and Periodic Screening, Diagnosis, and Treatment Program shall be exempt from clauses (ii) and (iii).

(B) Notwithstanding Chapter 3.5 (commencing with Section 11340) of Part 1 of Division 3 of Title 2 of the Government Code, the department may take the actions specified in subparagraph (A) by means of a provider bulletin or notice, policy letter, or other similar instruction without taking regulatory action.

(e) Outpatient dialysis services and home hemodialysis services, including physician services, medical supplies, drugs, and equipment required for dialysis, are covered, subject to utilization controls.

(f) Anesthesiologist services when provided as part of an outpatient medical procedure, nurse anesthetist services when rendered in an inpatient or outpatient setting under conditions set forth by the director, outpatient laboratory services, and X-ray services are covered, subject to utilization controls. Nothing in this subdivision shall be construed to require prior authorization for anesthesiologist services provided as part of an outpatient medical procedure or for portable X-ray services in a nursing facility or any category of intermediate care facility for the developmentally disabled.

(g) Blood and blood derivatives are covered.

(h) (1) Emergency and essential diagnostic and restorative dental services, except for orthodontic, fixed bridgework, and partial dentures that are not necessary for balance of a complete artificial denture, are covered, subject to utilization controls. The utilization controls shall allow emergency and essential diagnostic and restorative dental services and prostheses that are necessary to prevent a significant disability or to replace previously furnished prostheses that are lost or destroyed due to circumstances beyond the beneficiary's control. Notwithstanding the foregoing, the director may by regulation provide for certain fixed artificial dentures necessary for obtaining employment or for medical conditions that preclude the use of removable dental prostheses, and for orthodontic services in cleft palate deformities administered by the department's California Children Services Program.

(2) For persons 21 years of age or older, the services specified in paragraph (1) shall be provided subject to the following conditions:

(A) Periodontal treatment is not a benefit.

(B) Endodontic therapy is not a benefit except for vital pulpotomy.

(C) Laboratory processed crowns are not a benefit.

 

4

(D) Removable prosthetics shall be a benefit only for patients as a requirement for employment.

(E) The director may, by regulation, provide for the provision of fixed artificial dentures that are necessary for medical conditions that preclude the use of removable dental prostheses.

(F) Notwithstanding the conditions specified in subparagraphs (A) to (E), inclusive, the department may approve services for persons with special medical disorders subject to utilization review.

(3) Paragraph (2) shall become inoperative July 1, 1995.

(i) Medical transportation is covered, subject to utilization controls.

(j) Home health care services are covered, subject to utilization controls.

(k) Prosthetic and orthotic devices and eyeglasses are covered, subject to utilization controls. Utilization controls shall allow replacement of prosthetic and orthotic devices and eyeglasses necessary because of loss or destruction due to circumstances beyond the beneficiary's control. Frame styles for eyeglasses replaced pursuant to this subdivision shall not change more than once every two years, unless the department so directs.

Orthopedic and conventional shoes are covered when provided by a prosthetic and orthotic supplier on the prescription of a physician and when at least one of the shoes will be attached to a prosthesis or brace, subject to utilization controls. Modification of stock conventional or orthopedic shoes when medically indicated, is covered subject to utilization controls. When there is a clearly established medical need that cannot be satisfied by the modification of stock conventional or orthopedic shoes, custom-made orthopedic shoes are covered, subject to utilization controls.

Therapeutic shoes and inserts are covered when provided to beneficiaries with a diagnosis of diabetes, subject to utilization controls, to the extent that federal financial participation is available.

(*l*) Hearing aids are covered, subject to utilization controls. Utilization controls shall allow replacement of hearing aids necessary because of loss or destruction due to circumstances beyond the beneficiary's control.

(m) Durable medical equipment and medical supplies are covered, subject to utilization controls. The utilization controls shall allow the replacement of durable medical equipment and medical supplies when necessary because of loss or destruction due to circumstances beyond the beneficiary's control. The utilization controls shall allow authorization of durable medical equipment needed to assist a disabled beneficiary in caring for a child for whom the disabled beneficiary is a parent, stepparent, foster parent, or legal guardian, subject to the availability of federal financial participation. The department shall adopt emergency regulations to define and establish criteria for assistive durable medical equipment in accordance with the rulemaking provisions of the Administrative Procedure Act (Chapter 3.5 (commencing with Section 11340) of Part 1 of Division 3 of Title 2 of the Government Code).

(n) Family planning services are covered, subject to utilization controls. However, for Medi-Cal managed care plans, any utilization controls shall be subject to Section 1367.25 of the Health and Safety Code.

 

5

(o) Inpatient intensive rehabilitation hospital services, including respiratory rehabilitation services, in a general acute care hospital are covered, subject to utilization controls, when either of the following criteria are met:

(1) A patient with a permanent disability or severe impairment requires an inpatient intensive rehabilitation hospital program as described in Section 14064 to develop function beyond the limited amount that would occur in the normal course of recovery.

(2) A patient with a chronic or progressive disease requires an inpatient intensive rehabilitation hospital program as described in Section 14064 to maintain the patient's present functional level as long as possible.

(p) (1) Adult day health care is covered in accordance with Chapter 8.7 (commencing with Section 14520).

(2) Commencing 30 days after the effective date of the act that added this paragraph, and notwithstanding the number of days previously approved through a treatment authorization request, adult day health care is covered for a maximum of three days per week.

(3) As provided in accordance with paragraph (4), adult day health care is covered for a maximum of five days per week.

(4) As of the date that the director makes the declaration described in subdivision (g) of Section 14525.1, paragraph (2) shall become inoperative and paragraph (3) shall become operative.

(q) (1) Application of fluoride, or other appropriate fluoride treatment as defined by the department, and other prophylaxis treatment for children 17 years of age and under are covered.

(2) All dental hygiene services provided by a registered dental hygienist, registered dental hygienist in extended functions, and registered dental hygienist in alternative practice licensed pursuant to Sections 1753, 1917, 1918, and 1922 of the Business and Professions Code may be covered as long as they are within the scope of Denti-Cal benefits and they are necessary services provided by a registered dental hygienist, registered dental hygienist in extended functions, or registered dental hygienist in alternative practice.

(r) (1) Paramedic services performed by a city, county, or special district, or pursuant to a contract with a city, county, or special district, and pursuant to a program established under former Article 3 (commencing with Section 1480) of Chapter 2.5 of Division 2 of the Health and Safety Code by a paramedic certified pursuant to that article, and consisting of defibrillation and those services specified in subdivision (3) of former Section 1482 of the article.

(2) All providers enrolled under this subdivision shall satisfy all applicable statutory and regulatory requirements for becoming a Medi-Cal provider.

(3) This subdivision shall be implemented only to the extent funding is available under Section 14106.6.

(s) In-home medical care services are covered when medically appropriate and subject to utilization controls, for beneficiaries who would otherwise require care for an extended period of time in an acute care hospital at a cost higher than in-home medical care services. The director shall have the

25



6

authority under this section to contract with organizations qualified to provide in-home medical care services to those persons. These services may be provided to patients placed in shared or congregate living arrangements, if a home setting is not medically appropriate or available to the beneficiary. As used in this section, "in-home medical care service" includes utility bills directly attributable to continuous, 24-hour operation of life-sustaining medical equipment, to the extent that federal financial participation is available.

As used in this subdivision, in-home medical care services include, but are not limited to:

(1) Level-of-care and cost-of-care evaluations.

(2) Expenses, directly attributable to home care activities, for materials.

(3) Physician fees for home visits.

(4) Expenses directly attributable to home care activities for shelter and modification to shelter.

(5) Expenses directly attributable to additional costs of special diets, including tube feeding.

(6) Medically related personal services.

(7) Home nursing education.

(8) Emergency maintenance repair.

(9) Home health agency personnel benefits that permit coverage of care during periods when regular personnel are on vacation or using sick leave.

(10) All services needed to maintain antiseptic conditions at stoma or shunt sites on the body.

(11) Emergency and nonemergency medical transportation.

(12) Medical supplies.

(13) Medical equipment, including, but not limited to, scales, gurneys, and equipment racks suitable for paralyzed patients.

(14) Utility use directly attributable to the requirements of home care activities that are in addition to normal utility use.

(15) Special drugs and medications.

(16) Home health agency supervision of visiting staff that is medically necessary, but not included in the home health agency rate.

(17) Therapy services.

(18) Household appliances and household utensil costs directly attributable to home care activities.

(19) Modification of medical equipment for home use.

(20) Training and orientation for use of life-support systems, including, but not limited to, support of respiratory functions.

(21) Respiratory care practitioner services as defined in Sections 3702 and 3703 of the Business and Professions Code, subject to prescription by a physician and surgeon.

Beneficiaries receiving in-home medical care services are entitled to the full range of services within the Medi-Cal scope of benefits as defined by this section, subject to medical necessity and applicable utilization control. Services provided pursuant to this subdivision, which are not otherwise included in the Medi-Cal schedule of benefits, shall be available only to the



extent that federal financial participation for these services is available in accordance with a home- and community-based services waiver.

(t) Home- and community-based services approved by the United States Department of Health and Human Services are covered to the extent that federal financial participation is available for those services under the state plan or waivers granted in accordance with Section 1315 or 1396n of Title 42 of the United States Code. The director may seek waivers for any or all home- and community-based services approvable under Section 1315 or 1396n of Title 42 of the United States Code. Coverage for those services shall be limited by the terms, conditions, and duration of the federal waivers.

(u) Comprehensive perinatal services, as provided through an agreement with a health care provider designated in Section 14134.5 and meeting the standards developed by the department pursuant to Section 14134.5, subject to utilization controls.

The department shall seek any federal waivers necessary to implement the provisions of this subdivision. The provisions for which appropriate federal waivers cannot be obtained shall not be implemented. Provisions for which waivers are obtained or for which waivers are not required shall be implemented notwithstanding any inability to obtain federal waivers for the other provisions. No provision of this subdivision shall be implemented unless matching funds from Subchapter XIX (commencing with Section 1396) of Chapter 7 of Title 42 of the United States Code are available.

(v) Early and periodic screening, diagnosis, and treatment for any individual under 21 years of age is covered, consistent with the requirements of Subchapter XIX (commencing with Section 1396) of Chapter 7 of Title 42 of the United States Code.

(w) Hospice service which is Medicare-certified hospice service is covered, subject to utilization controls. Coverage shall be available only to the extent that no additional net program costs are incurred.

(x) When a claim for treatment provided to a beneficiary includes both services that are authorized and reimbursable under this chapter, and services that are not reimbursable under this chapter that portion of the claim for the treatment and services authorized and reimbursable under this chapter shall be payable.

(y) Home- and community-based services approved by the United States Department of Health and Human Services for beneficiaries with a diagnosis of AIDS or ARC, who require intermediate care or a higher level of care.

Services provided pursuant to a waiver obtained from the Secretary of the United States Department of Health and Human Services pursuant to this subdivision, and which are not otherwise included in the Medi-Cal schedule of benefits, shall be available only to the extent that federal financial participation for these services is available in accordance with the waiver, and subject to the terms, conditions, and duration of the waiver. These services shall be provided to individual beneficiaries in accordance with the client's needs as identified in the plan of care, and subject to medical necessity and applicable utilization control.

8

The director may under this section contract with organizations qualified to provide, directly or by subcontract, services provided for in this subdivision to eligible beneficiaries. Contracts or agreements entered into pursuant to this division shall not be subject to the Public Contract Code.

(z) Respiratory care when provided in organized health care systems as defined in Section 3701 of the Business and Professions Code, and as an in-home medical service as outlined in subdivision (s).

(aa) (1) There is hereby established in the department, a program to provide comprehensive clinical family planning services to any person who has a family income at or below 200 percent of the federal poverty level, as revised annually, and who is eligible to receive these services pursuant to the waiver identified in paragraph (2). This program shall be known as the Family Planning, Access, Care, and Treatment (Family PACT) Program.

(2) The department shall seek a waiver in accordance with Section 1315 of Title 42 of the United States Code, or a state plan amendment adopted in accordance with Section 1396a(a)(10)(A)(ii)(XXI) of Title 42 of the United States Code, which was added to Section 1396a of Title 42 of the United States Code by Section 2303(a)(2) of the federal Patient Protection and Affordable Care Act (PPACA) (Public Law 111-148), for a program to provide comprehensive clinical family planning services as described in paragraph (8). Under the waiver, the program shall be operated only in accordance with the waiver and the statutes and regulations in paragraph (4) and subject to the terms, conditions, and duration of the waiver. Under the state plan amendment, which shall replace the waiver and shall be known as the Family PACT successor state plan amendment, the program shall be operated only in accordance with this subdivision and the statutes and regulations in paragraph (4). The state shall use the standards and processes imposed by the state on January 1, 2007, including the application of an eligibility discount factor to the extent required by the federal Centers for Medicare and Medicaid Services, for purposes of determining eligibility as permitted under Section 1396a(a)(10)(A)(ii)(XXI) of Title 42 of the United States Code. To the extent that federal financial participation is available, the program shall continue to conduct education, outreach, enrollment, service delivery, and evaluation services as specified under the waiver. The services shall be provided under the program only if the waiver and, when applicable, the successor state plan amendment are approved by the federal Centers for Medicare and Medicaid Services and only to the extent that federal financial participation is available for the services. Nothing in this section shall prohibit the department from seeking the Family PACT successor state plan amendment during the operation of the waiver.

(3) Solely for the purposes of the waiver or Family PACT successor state plan amendment and notwithstanding any other law, the collection and use of an individual's social security number shall be necessary only to the extent required by federal law.

(4) Sections 14105.3 to 14105.39, inclusive, 14107.11, 24005, and 24013, and any regulations adopted under these statutes shall apply to the program provided for under this subdivision. No other provision of law under the

 

9

Medi-Cal program or the State-Only Family Planning Program shall apply to the program provided for under this subdivision.

(5) Notwithstanding Chapter 3.5 (commencing with Section 11340) of Part 1 of Division 3 of Title 2 of the Government Code, the department may implement, without taking regulatory action, the provisions of the waiver after its approval by the federal Centers for Medicare and Medicaid Services and the provisions of this section by means of an all-county letter or similar instruction to providers. Thereafter, the department shall adopt regulations to implement this section and the approved waiver in accordance with the requirements of Chapter 3.5 (commencing with Section 11340) of Part 1 of Division 3 of Title 2 of the Government Code. Beginning six months after the effective date of the act adding this subdivision, the department shall provide a status report to the Legislature on a semiannual basis until regulations have been adopted.

(6) In the event that the Department of Finance determines that the program operated under the authority of the waiver described in paragraph (2) or the Family PACT successor state plan amendment is no longer cost effective, this subdivision shall become inoperative on the first day of the first month following the issuance of a 30-day notification of that determination in writing by the Department of Finance to the chairperson in each house that considers appropriations, the chairpersons of the committees, and the appropriate subcommittees in each house that considers the State Budget, and the Chairperson of the Joint Legislative Budget Committee.

(7) If this subdivision ceases to be operative, all persons who have received or are eligible to receive comprehensive clinical family planning services pursuant to the waiver described in paragraph (2) shall receive family planning services under the Medi-Cal program pursuant to subdivision (n) if they are otherwise eligible for Medi-Cal with no share of cost, or shall receive comprehensive clinical family planning services under the program established in Division 24 (commencing with Section 24000) either if they are eligible for Medi-Cal with a share of cost or if they are otherwise eligible under Section 24003.

(8) For purposes of this subdivision, "comprehensive clinical family planning services" means the process of establishing objectives for the number and spacing of children, and selecting the means by which those objectives may be achieved. These means include a broad range of acceptable and effective methods and services to limit or enhance fertility, including contraceptive methods, federal Food and Drug Administration approved contraceptive drugs, devices, and supplies, natural family planning, abstinence methods, and basic, limited fertility management. Comprehensive clinical family planning services include, but are not limited to, preconception counseling, maternal and fetal health counseling, general reproductive health care, including diagnosis and treatment of infections and conditions, including cancer, that threaten reproductive capability, medical family planning treatment and procedures, including supplies and followup, and informational, counseling, and educational services.

 

10

Comprehensive clinical family planning services shall not include abortion, pregnancy testing solely for the purposes of referral for abortion or services ancillary to abortions, or pregnancy care that is not incident to the diagnosis of pregnancy. Comprehensive clinical family planning services shall be subject to utilization control and include all of the following:

(A) Family planning related services and male and female sterilization. Family planning services for men and women shall include emergency services and services for complications directly related to the contraceptive method, federal Food and Drug Administration approved contraceptive drugs, devices, and supplies, and followup, consultation, and referral services, as indicated, which may require treatment authorization requests.

(B) All United States Department of Agriculture, federal Food and Drug Administration approved contraceptive drugs, devices, and supplies that are in keeping with current standards of practice and from which the individual may choose.

(C) Culturally and linguistically appropriate health education and counseling services, including informed consent, that include all of the following:

(i) Psychosocial and medical aspects of contraception.

(ii) Sexuality.

(iii) Fertility.

(iv) Pregnancy.

(v) Parenthood.

(vi) Infertility.

(vii) Reproductive health care.

(viii) Preconception and nutrition counseling.

(ix) Prevention and treatment of sexually transmitted infection.

(x) Use of contraceptive methods, federal Food and Drug Administration approved contraceptive drugs, devices, and supplies.

(xi) Possible contraceptive consequences and followup.

(xii) Interpersonal communication and negotiation of relationships to assist individuals and couples in effective contraceptive method use and planning families.

(D) A comprehensive health history, updated at the next periodic visit (between 11 and 24 months after initial examination) that includes a complete obstetrical history, gynecological history, contraceptive history, personal medical history, health risk factors, and family health history, including genetic or hereditary conditions.

(E) A complete physical examination on initial and subsequent periodic visits.

(F) Services, drugs, devices, and supplies deemed by the federal Centers for Medicare and Medicaid Services to be appropriate for inclusion in the program.

(9) In order to maximize the availability of federal financial participation under this subdivision, the director shall have the discretion to implement the Family PACT successor state plan amendment retroactively to July 1, 2010.

 

11

(ab) (1) Purchase of prescribed enteral nutrition products is covered, subject to the Medi-Cal list of enteral nutrition products and utilization controls.

(2) Purchase of enteral nutrition products is limited to those products to be administered through a feeding tube, including, but not limited to, a gastric, nasogastric, or jejunostomy tube. Beneficiaries under the Early and Periodic Screening, Diagnosis, and Treatment Program shall be exempt from this paragraph.

(3) Notwithstanding paragraph (2), the department may deem an enteral nutrition product, not administered through a feeding tube, including, but not limited to, a gastric, nasogastric, or jejunostomy tube, a benefit for patients with diagnoses, including, but not limited to, malabsorption and inborn errors of metabolism, if the product has been shown to be neither investigational nor experimental when used as part of a therapeutic regimen to prevent serious disability or death.

(4) Notwithstanding Chapter 3.5 (commencing with Section 11340) of Part 1 of Division 3 of Title 2 of the Government Code, the department may implement the amendments made to this subdivision by the act that added this paragraph by means of all-county letters, provider bulletins, or similar instructions, without taking regulatory action.

(5) The amendments made to this subdivision by the act that added this paragraph shall be implemented June 1, 2011, or on the first day of the first calendar month following 60 days after the date the department secures all necessary federal approvals to implement this section, whichever is later.

(ac) Diabetic testing supplies are covered when provided by a pharmacy, subject to utilization controls.

(ad) (1) Nonmedical transportation is covered, subject to utilization controls and permissible time and distance standards, for a beneficiary to obtain covered Medi-Cal services.

(2) (A) (i) Nonmedical transportation includes, at a minimum, round trip transportation for a beneficiary to obtain covered Medi-Cal services by passenger car, taxicab, or any other form of public or private conveyance, and mileage reimbursement when conveyance is in a private vehicle arranged by the beneficiary and not through a transportation broker, bus passes, taxi vouchers, or train tickets.

(ii) Nonmedical transportation does not include the transportation of sick, injured, invalid, convalescent, infirm, or otherwise incapacitated beneficiaries by ambulances, litter vans, or wheelchair vans licensed, operated, and equipped in accordance with state and local statutes, ordinances, or regulations.

(B) Nonmedical transportation shall be provided for a beneficiary who can attest in a manner to be specified by the department that other currently available resources have been reasonably exhausted. For beneficiaries enrolled in a managed care plan, nonmedical transportation shall be provided by the beneficiary's managed care plan. For Medi-Cal fee-for-service beneficiaries, the department shall provide nonmedical transportation when



12

those services are not available to the beneficiary under Sections 14132.44 and 14132.47.

(3)  Nonmedical transportation shall be provided in a form and manner that is accessible, in terms of physical and geographic accessibility, for the beneficiary and consistent with applicable state and federal disability rights laws.

(4)  It is the intent of the Legislature in enacting this subdivision to affirm the requirement under Section 431.53 of Title 42 of the Code of Federal Regulations, in which the department is required to provide necessary transportation, including nonmedical transportation, for recipients to and from covered services. This subdivision shall not be interpreted to add a new benefit to the Medi-Cal program.

(5)  The department shall seek any federal approvals that may be required to implement this subdivision, including, but not limited to, approval of revisions to the existing state plan that the department determines are necessary to implement this subdivision.

(6)  This subdivision shall be implemented only to the extent that federal financial participation is available and not otherwise jeopardized, and any necessary federal approvals have been obtained.

(7)  Prior to the effective date of any necessary federal approvals, nonmedical transportation was not a Medi-Cal managed care benefit with the exception of when provided as an Early and Periodic Screening, Diagnosis, and Treatment (EPSDT) service.

(8)  Notwithstanding Chapter 3.5 (commencing with Section 11340) of Part 1 of Division 3 of Title 2 of the Government Code, the department, without taking any further regulatory action, shall implement, interpret, or make specific this subdivision by means of all-county letters, plan letters, plan or provider bulletins, or similar instructions until the time regulations are adopted. By July 1, 2018, the department shall adopt regulations in accordance with the requirements of Chapter 3.5 (commencing with Section 11340) of Part 1 of Division 3 of Title 2 of the Government Code. Commencing January 1, 2018, and notwithstanding Section 10231.5 of the Government Code, the department shall provide a status report to the Legislature on a semiannual basis, in compliance with Section 9795 of the Government Code, until regulations have been adopted.

(9)  This subdivision shall not be implemented until July 1, 2017.

O

09/12/2017

# Exhibit "B"



**DHCS**

JENNIFER KENT
*DIRECTOR*

State of California—Health and Human Services Agency
# Department of Health Care Services



EDMUND G. BROWN JR.
*GOVERNOR*

**DATE:**     July 17, 2017

ALL PLAN LETTER 17-010 (*REVISED*)

**TO:**        ALL MEDI-CAL MANAGED CARE HEALTH PLANS

**SUBJECT:**   NON-EMERGENCY MEDICAL AND NON-MEDICAL TRANSPORTATION
              SERVICES

**PURPOSE:**
This All Plan Letter (APL) provides Medi-Cal managed care health plans (MCPs) with
guidance regarding Non-Emergency Medical Transportation (NEMT) and Non-Medical
Transportation (NMT) services. With the passage of Assembly Bill (AB) 2394 (Chapter
615, Statutes of 2016), which amended Section 14132 of the Welfare and Institutions
Code (WIC), the Department of Health Care Services (DHCS) is clarifying MCPs'
obligations to provide and coordinate NEMT and NMT services. In addition, this APL
provides guidance on the application of NEMT and NMT services due to the Medicaid
Mental Health Parity Final Rule (CMS-2333-F)[1]. *Revised text is found in italics.*

**BACKGROUND:**
DHCS administers the Medi-Cal Program, which provides comprehensive health care
services to millions of low-income families and individuals through contracts with MCPs.
Pursuant to Social Security Act (SSA) Section 1905(a)(29) and Title 42 of the Code of
Federal Regulations (CFR) Sections 440.170, 441.62, and 431.53, MCPs are required
to establish procedures for the provision of Early and Periodic Screening, Diagnostic,
and Treatment (EPSDT) services for qualifying members to receive medically
necessary transportation services. NEMT services are authorized under SSA Section
1902 (a)(70), 42 CFR Section 440.170, and Title 22 of the California Code of
Regulations (CCR) Sections 51323, 51231.1, and 51231.2.

AB 2394 amended WIC Section 14132(ad)(1) to provide that, effective July 1, 2017,
NMT is covered, subject to utilization controls and permissible time and distance
standards, for MCP members to obtain covered Medi-Cal medical, dental, mental
health, and substance use disorder services. Beginning on July 1, 2017, MCPs must
provide NMT for MCP members to obtain medically necessary MCP-covered services
and must make their best effort to refer for and coordinate NMT for all Medi-Cal services

---

[1] CMS-2333-F

Managed Care Quality and Monitoring Division
1501 Capitol Avenue, P.O. Box 997413, MS 4400
Sacramento, CA 95899-7413
Phone (916) 449-5000 Fax (916) 449-5005
www.dhcs.ca.gov

34

ALL PLAN LETTER 17-010 *(REVISED)*
Page 2

not covered under the MCP contract.  Effective October 1, 2017, in part to comply with
CMS-2333-F and to have a uniform delivery system, MCPs must also provide NMT for
Medi-Cal services that are not covered under the MCP contract.  Services that are not
covered under the MCP contract include, but are not limited to, specialty mental health,
substance use disorder, dental, and any other services delivered through the Medi-Cal
fee-for-service (FFS) delivery system.

## REQUIREMENTS:

### Non-Emergency Medical Transportation
NEMT services are a covered Medi-Cal benefit when a member needs to obtain
medically necessary covered services and when prescribed in writing by a physician,
dentist, podiatrist, or mental health or substance use disorder provider.  NEMT services
are subject to a prior authorization, except when a member is transferred from an acute
care hospital, immediately following an inpatient stay at the acute level of care, to a
skilled nursing facility or an intermediate care facility licensed pursuant to Health and
Safety Code (HSC) Section 1250[2].

MCPs must ensure that the medical professional's decisions regarding NEMT are
unhindered by fiscal and administrative management, in accordance with their contract
with DHCS[3].  MCPs are also required to authorize, at a minimum, the lowest cost type
of NEMT transportation (see modalities below) that is adequate for the member's
medical needs.  For Medi-Cal services that are not covered by the MCP's contract, the
MCP must make its best effort to refer for and coordinate NEMT.  MCPs must ensure
that there are no limits to receiving NEMT as long as the member's medical services are
medically necessary and the NEMT has prior authorization.

MCPs are required to provide medically appropriate NEMT services when the member's
medical and physical condition is such that transport by ordinary means of public or
private conveyance is medically contraindicated and transportation is required for
obtaining medically necessary services[4].  MCPs are required to provide NEMT for
members who cannot reasonably ambulate or are unable to stand or walk without
assistance, including those using a walker or crutches[5].  MCPs shall also ensure door-
to-door assistance for all members receiving NEMT services.

Unless otherwise provided by law, MCPs must provide transportation for a parent or a
guardian when the member is a minor.  With the written consent of a parent or guardian,
MCPs may arrange NEMT for a minor who is unaccompanied by a parent or a guardian.

---

[2] 22 CCR Section 51323 (b)(2)(C)
[3] Exhibit A, Attachment 1 (Organization and Administration of the Plan)
[4] 22 CCR Section 51323 (a)
[5] Manual of Criteria for Medi-Cal Authorization, Chapter 12.1 Criteria for Medical Transportation and Related Services



ALL PLAN LETTER 17-010 *(REVISED)*
Page 3

MCPs must provide transportation services for unaccompanied minors when applicable State or federal law does not require parental consent for the minor's service. The MCP is responsible to ensure all necessary written consent forms are received prior to arranging transportation for an unaccompanied minor.

MCPs must provide the following four available modalities of NEMT transportation in accordance with the Medi-Cal Provider Manual[6] and the CCR[7] when the member's medical and physical condition is such that transport by ordinary means of public or private conveyance is medically contraindicated and transportation is required for the purpose of obtaining needed medical care:

1. MCPs must provide **NEMT ambulance services** for[8]:
   - Transfers between facilities for members who require continuous intravenous medication, medical monitoring or observation.
   - Transfers from an acute care facility to another acute care facility.
   - Transport for members who have recently been placed on oxygen (does not apply to members with chronic emphysema who carry their own oxygen for continuous use).
   - Transport for members with chronic conditions who require oxygen if monitoring is required.

2. MCPs must provide **litter van services** when the member's medical and physical condition does not meet the need for NEMT ambulance services, but meets both of the following:
   - Requires that the member be transported in a prone or supine position, because the member is incapable of sitting for the period of time needed to transport[9].
   - Requires specialized safety equipment over and above that normally available in passenger cars, taxicabs or other forms of public conveyance[10].

3. MCPs must provide **wheelchair van services** when the member's medical and physical condition does not meet the need for litter van services, but meets any of the following:
   - Renders the member incapable of sitting in a private vehicle, taxi or other form of public transportation for the period of time needed to transport[11].

---

[6] Medi-Cal Provider Manual: Medical Transportation – Ground
[7] 22 CCR Section 51323(a) and (c)
[8] Medi-Cal Provider Manual: Medical Transportation – Ground, page 9, Ambulance: Qualified Recipients
[9] 22 CCR Section 51323 (2)(A)(1)
[10] 22 CCR Section 51323 (2)(B)
[11] 22 CCR Section 51323 (3)(A)

36



ALL PLAN LETTER 17-010 *(REVISED)*
Page 4

- Requires that the member be transported in a wheelchair or assisted to and from a residence, vehicle and place of treatment because of a disabling physical or mental limitation[12].
- Requires specialized safety equipment over and above that normally available in passenger cars, taxicabs or other forms of public conveyance[13].

Members with the following conditions may qualify for wheelchair van transport when their providers submit a signed Physician Certification Statement (PCS) form (as described below)[14]:

- Members who suffer from severe mental confusion.
- Members with paraplegia.
- Dialysis recipients.
- Members with chronic conditions who require oxygen but do not require monitoring.

4. MCPs must provide **NEMT by air** only under the following conditions[15]:
   - When transportation by air is necessary because of the member's medical condition or because practical considerations render ground transportation not feasible. The necessity for transportation by air shall be substantiated in a written order of a physician, dentist, podiatrist, or mental health or substance use disorder provider.

**NEMT Physician Certification Statement Forms**
MCPs and transportation brokers must use a DHCS approved PCS form to determine the appropriate level of service for Medi-Cal members. Once the member's treating physician prescribes the form of transportation, the MCP cannot modify the authorization. In order to ensure consistency amongst all MCPs, all NEMT PCS forms must include, at a minimum, the components listed below:

- Function Limitations Justification: For NEMT, the physician is required to document the member's limitations and provide specific physical and medical limitations that preclude the member's ability to reasonably ambulate *without* assistance or be transported by public or private vehicles.
- Dates of Service Needed: Provide start and end dates for NEMT services; authorizations may be for a maximum of 12 months.
- Mode of Transportation Needed: List the mode of transportation that is to be used when receiving these services (ambulance/gurney van, litter van, wheelchair van or air transport).

---

[12] 22 CCR Section 51323 (3)(B)
[13] 22 CCR Section 51323 (3)(C)
[14] Medi-Cal Provider Manual: Medical Transportation – Ground, page 11, Wheelchair Van
[15] 22 CCR Section 51323 (c)(2)



ALL PLAN LETTER 17-010 *(REVISED)*
Page 5

- Certification Statement: Prescribing physician's statement certifying that medical necessity was used to determine the type of transportation being requested.

Each MCP must have a mechanism to capture and submit data from the PCS form to DHCS.  Members can request a PCS form from their physician by telephone, electronically, in person, or by another method established by the MCP.

**Non-Medical Transportation**
NMT has been a covered benefit when provided as an EPSDT service[16].  Beginning on July 1, 2017, MCPs must provide NMT for MCP members to obtain medically necessary MCP-covered services.  For all Medi-Cal services not covered under the MCP contract, MCPs must make their best effort to refer for and coordinate NMT.

Effective October 1, 2017, MCPs must provide NMT for all Medi-Cal services, including those not covered by the MCP contract.  Services that are not covered under the MCP contract include, but are not limited to, specialty mental health, substance use disorder, dental, and any other benefits delivered through the Medi-Cal FFS delivery system.

NMT does not include transportation of the sick, injured, invalid, convalescent, infirm, or otherwise incapacitated members who need to be transported by ambulances, litter vans, or wheelchair vans licensed, operated, and equipped in accordance with state and local statutes, ordinances, or regulations.  Physicians may authorize NMT for members if they are currently using a wheelchair but the limitation is such that the member is able to ambulate without assistance from the driver.  The NMT requested must be the least costly method of transportation that meets the member's needs.

MCPs are contractually required to provide members with a Member Services Guide that includes information on the procedures for obtaining NMT transportation services[17]. The Member Services Guide must include a description of NMT services and the conditions under which NMT is available.

At a minimum, MCPs must provide the following NMT services[18]:
- Round trip transportation for a member by passenger car, taxicab, or any other form of public or private conveyance (private vehicle)[19], as well as mileage reimbursement for medical purposes[20] when conveyance is in a private vehicle arranged by the member and not through a transportation broker, bus passes, taxi vouchers or train tickets.

---

[16] WIC 14132 (ad)(7)
[17] Exhibit A, Attachment 13 (Member Services), Written Member Information
[18] WIC Section 14132(ad)
[19] Vehicle Code (VEH) Section 465
[20] IRS Standard Mileage Rate for Business and Medical Purposes



ALL PLAN LETTER 17-010 *(REVISED)*
Page 6

- Round trip NMT is available for the following:
  - Medically necessary covered services.
  - Members picking up drug prescriptions that cannot be mailed directly to the member.
  - Members picking up medical supplies, prosthetics, orthotics and other equipment.
- MCPs must provide NMT in a form and manner that is accessible, in terms of physical and geographic accessibility, for the member and consistent with applicable state and federal disability rights laws.

**Conditions for Non-Medical Transportation Services:**
- MCP may use prior authorization processes for approving NMT services and re-authorize services every 12 months when necessary.
- NMT coverage includes transportation costs for the member and one attendant, such as a parent, guardian, or spouse, to accompany the member in a vehicle or on public transportation, subject to prior authorization at time of initial NMT authorization request.
- With the written consent of a parent or guardian, MCPs may arrange for NMT for a minor who is unaccompanied by a parent or a guardian. MCPs must provide transportation services for unaccompanied minors when state or federal law does not require parental consent for the minor's service. The MCP is responsible to ensure all necessary written consent forms are received prior to arranging transportation for an unaccompanied minor.
- NMT does not cover trips to a non-medical location or for appointments that are not medically necessary.
- For private conveyance, the member must attest to the MCP in person, electronically, or over the phone that other transportation resources have been reasonably exhausted. The attestation may include confirmation that the member:
  - Has no valid driver's license.
  - Has no working vehicle available in the household.
  - Is unable to travel or wait for medical or dental services alone.
  - Has a physical, cognitive, mental, or developmental limitation.

**Non-Medical Transportation Private Vehicle Authorization Requirements**
The MCPs must authorize the use of private conveyance (private vehicle)[21] when no other methods of transportation are reasonably available to the member or provided by the MCP. Prior to receiving approval for use of a private vehicle, the member must exhaust all other reasonable options and provide an attestation to the MCP stating other methods of transportation are not available. The attestation can be made over the

---

[21] VEH Section 465

ALL PLAN LETTER 17-010 *(REVISED)*
Page 7

phone, electronically, or in person.  In order to receive gas mileage reimbursement for use of a private vehicle, the driver must be compliant with all California driving requirements, which include[22]:

- Valid driver's license.
- Valid vehicle registration.
- Valid vehicle insurance.

MCPs are only required to reimburse the driver for gas mileage consistent with the Internal Revenue Service standard mileage rate for medical transportation[23].

**Non-Medical Transportation Authorization**
MCPs may authorize NMT for each member prior to the member using NMT services. If the MCP requires prior authorization for NMT services, the MCP is responsible for developing a process to ensure that members can request authorization and be approved for NMT in a timely matter.  The MCP's prior authorization process must be consistently applied to medical/surgical, mental health and substance use disorder services as required by CMS-2333-F.

**Non-Medical Transportation and Non-Emergency Medical Transportation Access Standards**
MCPs are contractually required to meet timely access standards[24].  MCPs that have a Knox-Keene license are also required to meet the timely access standards contained in Title 28 CCR Section 1300.67.2.2.  The member's need for NMT and NEMT services do not relieve the MCPs from complying with their timely access standard obligations.

MCPs are responsible for ensuring that their delegated entities and subcontractors comply with all applicable state and federal laws and regulations, contractual requirements, and other requirements set forth in DHCS guidance, including APLs and Dual Plan Letters.  MCPs must timely communicate these requirements to all delegated entities and subcontractors in order to ensure compliance.



[22] VEH Section 12500, 4000, and 16020
[23] IRS Standard Mileage Rate for Business and Medical Purposes
[24] 28 CCR Section1300.51(d)(H); Exhibit A, Attachment 9 (Access and Availability)

40



ALL PLAN LETTER 17-010 *(REVISED)*
Page 8


If you have any questions regarding this APL, contact your Managed Care Operations Division Contract Manager.

Sincerely,


Original Signed by Nathan Nau


Nathan Nau, Chief
Managed Care Quality and Monitoring Division

Exhibit C

Exhibit "C"






**DHCS**

JENNIFER KENT
*DIRECTOR*

State of California—Health and Human Services Agency
# Department of Health Care Services



EDMUND G. BROWN JR.
*GOVERNOR*

July 31, 2017

The Honorable Adrin Nazarian
Member of the Assembly
State Capitol, Room 4146
Sacramento, CA 95814

Dear Assembly Member Nazarian:

Thank you for your letter dated May 19, 2017, in which you requested clarification about the Medi-Cal Non-Emergency Medical Transportation (NEMT) and Non-Medical Transportation (NMT) benefit.  The Department of Health Care Services (DHCS) released the All Plan Letter (APL) on June 29, 2017, that provides Medi-Cal managed care health plans (Plans) guidance regarding NEMT and NMT services.

NMT and NEMT are both benefits under the Medi-Cal program.  NEMT is a covered Medi-Cal benefit that must be provided to a Medi-Cal managed care member (Member) when it is needed to obtain medically necessary covered services and when prescribed by a physician.  Title 22 CCR section 51323(b) requires plans to provide the "type of medical transportation that is adequate for the patient's medical needs."  In response to your specific question, NMT is not an appropriate, qualifying alternative when all necessary criteria for NEMT are met.

As outlined in the APL and 22 CCR section 51323, the four modes of NEMT include ambulance, litter van, wheelchair van, and air transport.  NEMT services require a Physician Certification Statement (PCS) form, and must specify, at a minimum, the functional limitations justification, date of services needed, mode of transportation needed, and the prescribing physician's certification statement.  In order to ensure that Members obtain the transportation "that is adequate for the patient's medical needs," MCPs cannot alter the type of transportation prescribed through the PCS form once authorized by the Member's physician.  In addition, plans must ensure that the medical professional's decisions regarding NEMT are unhindered by fiscal and administrative management. Last, only the authorizing physician may make updates or changes to the PCS form.  Once the prescription is on file for the Member, the plan is required to provide the prescribed NEMT to the Member.

Effective July 1, 2017, NMT is a Medi-Cal benefit to assist Members in obtaining medically necessary covered Medi-Cal services.  NMT includes round-trip transportation by passenger car, taxicab, or other forms of private or public conveyance.

Managed Care Quality and Monitoring Division
1501 Capitol Avenue, P.O. Box 997413, MS 4400
Sacramento, CA 95899-7413
Phone (916) 449-5000    Fax (916) 449-5005
www.dhcs.ca.gov

43



The Honorable Adrin Nazarian
Page 2
July 31, 2017

NMT does not include medical transportation of the sick, injured, invalid, convalescent, infirm, or incapacitated.  Plans are permitted to require prior authorization before a Member can access NMT.  To obtain prior authorization, the Member must attest that other transportation options have been reasonably exhausted.  Plans may authorize reimbursement for the use of a third person's private vehicle if the driver has a valid driver's license, vehicle registration, and vehicle insurance.

Effective October 1, 2017, in part to comply with the Medicaid Mental Health Parity Final Rule (CMS-2333-F) and to have a uniform delivery system, plans must also provide NMT for Medi-Cal services that are not covered under the plan's contract (i.e, dental or specialty mental health services).

DHCS continuously monitors our plans to ensure appropriate provision of covered transportation services through various mechanisms, including but not limited to, review and analysis of member grievances, Ombudsman reporting, and plan annual medical audits. DHCS will also review plans' policies and procedures related to NEMT and NMT to ensure plans are compliant with the new transportation requirements effective July 1, 2017, and October 1, 2017.  DHCS will also conduct enhanced monitoring throughout the first year of implementation, at a minimum, of this benefit for Medi-Cal managed care Members.  The enhanced monitoring will include data collection from plans pertaining to utilization, access to services, and grievances for both NEMT and NMT.

If you have any further questions, please contact me at nathan.nau@dhcs.ca.gov or 916-552-9373.

Sincerely,

Nathan Nau, Chief
Managed Care Quality and Monitoring Division
Department of Health Care Services

Exhibit "D"



# CITY OF LOS ANGELES
### CALIFORNIA

Seleta J. Reynolds
GENERAL MANAGER



**ERIC GARCETTI**
MAYOR

DEPARTMENT OF TRANSPORTATION
100 S. Main St., 10th Floor
LOS ANGELES, CA 90012
(213) 972-8470
FAX (213) 972-8410

TAXICAB & FRANCHISE REGULATIONS
(213) 928-9800
FAX (866) 316-8169

March 15, 2017

E14

**VIA REGULAR MAIL & EMAIL**

LogistiCare Solutions
Attn: Jody Gonzalez
7441 Lincoln Way, Suite 200
Garden Grove, CA 92841

SUBJECT:     **Non-Ambulatory Rates for Medical Transportation in the City of Los Angeles**

Dear Ms. Gonzalez,

The Los Angeles Department of Transportation (LADOT) which regulates medical transportation for the City of Los Angeles has received notice that LogistiCare Solutions has suggested its own rate structure for medical transportation in Los Angeles.  Our office is here to inform you that rates for Medical Transportation in the City of Los Angeles are set by the City Board of Transportation Commissioners and are non-negotiable.

For your reference a copy of Ordinance Number 182502 with the appropriate service rates is attached to this letter.

Please note that the explicit language of the ordinance reads as follows:

> "Any person, firm or corporation violating any of the provisions of said resolution shall be guilty of a misdemeanor and upon conviction shall be punishable by a fine of not more than One Thousand Dollars ($1,000.00), by imprisonment in the County Jail for a period not to exceed one hundred eighty (180) days, or by both such fine and imprisonment."

This penalty structure is per occurrence.

Along with regulation and inspection of vehicles, the LADOT also ensures that each driver providing medical transportation is CPR certified and the individual must have the documented ability to administer first aid.  Providers that service the City of Los Angeles may not deviate from these rates or the level of training required of their driver attendants.

The LADOT requests that your office abide by these guidelines when scheduling service and working with providers that serve the City of Los Angeles

46

Non-Ambulatory Rates                    -2-                              March 15, 2017

Thank you for your time and attention to this matter

Sincerely,

**JARVIS M. MURRAY**, Taxicab and Franchise Administrator
Taxicab and Franchise Regulation Division

L17-034.jmm
Attachment: Ordinance No. 182502

Cc: L.A. Healthcare Plan
Health Net Inc.
Anthem Blue Cross

47



ORDINANCE NO. ___182502___

An ordinance approving a resolution of the Los Angeles City Board of Transportation Commissioners, designated as Board Order No. 602, adopted June 14, 2012, fixing rates and charges for non-ambulatory passenger vehicle service in the City of Los Angeles.

## THE PEOPLE OF THE CITY OF LOS ANGELES
## DO ORDAIN AS FOLLOWS:

Section 1.  The resolution of the Board of Transportation Commissioners designated as Board Order No. 597 and its implementing ordinance are hereby rescinded and superceded by the resolution adopted by the Board of Transportation Commissioners on June 14, 2012, designated as Board Order No. 602, establishing and prescribing the legal rates to be charged by all non-ambulatory passenger vehicle providers in the City of Los Angeles, and said rates are hereby approved, as authorized pursuant to Section 22.484(g)(2)B.2.(ii) of the Administrative Code of the City of Los Angeles as follows:

<u>Response to Call for Wheelchair Passengers</u>

| | |
|---|---|
| 1 Patient | $37.25 |
| 2 Patients, each patient | $24.00 |
| 3 Patients, each patient | $21.00 |
| 4 or more patients, each patient | $16.75 |

<u>Response to Call for Litter Passenger</u>

| | |
|---|---|
| Each Patient | $95.50 |

<u>Mileage Rate</u>

| | |
|---|---|
| Each mile or fraction thereof | $3.50 |

<u>Time Rate</u>

<u>Waiting Time</u>:  Elapsed time necessitated by conditions beyond control of the operator at the loading and/or discharge points.

| | |
|---|---|
| For each 15-minute period or major fraction thereof after an initial 15-minute period | $9.00 |

1

48

## Special Charges

    a.    Service rendered after 7:00 p.m. and before 7:00 a.m. ................... $14.50

    b.    Extra attendant ............................................................................. $20.00

    c.    Wheelchair Use ............................................................................ $8.25

    d.    Oxygen ......................................................................................... $20.00

## Group Loads

In group loads, the mileage charge shall be prorated equitably among the passengers. The charge for an extra attendant shall be divided among those wheelchair passengers requesting the extra attendant; each litter patient shall be responsible for the full charge for the extra attendant.

## Rebates

It shall be unlawful for any non-ambulatory passenger vehicle service operator to give directly or indirectly, or cause to be given, any rebates, commissions, reserve rebates, or any reduced rates or cash discounts to any person, or persons, or groups of any nature, except as provided herein or which may be authorized by the Board by regulation.

## Applicability

The permittee shall not collect any rate or charge for non-ambulatory passenger vehicle trips originating in the City of Los Angeles other than authorized herein or as determined by any paramount authority. The foregoing rates and charges shall comprise the total of the permittee's service authorized by permit granted by the City of Los Angeles.

## Statement on Bills

Each bill for service rendered given to the customer shall contain a statement that complaints be referred to the Department of Transportation, 100 S. Main Street, 1st Floor, Los Angeles, California 90012, telephone (213) 928-9600.

Sec. 2. Any person, firm or corporation violating any of the provisions of said resolution shall be guilty of a misdemeanor and upon conviction shall be punishable by a fine of not more than One Thousand Dollars ($1,000.00), by imprisonment in the County Jail for a period not to exceed one hundred eighty (180) days, or by both such fine and imprisonment.

49

Sec. 3.  The City Clerk shall certify to the passage of this ordinance and have it published in accordance with Council policy, either in a daily newspaper circulated in the City of Los Angeles or by posting for ten days in three public places in the City of Los Angeles:  one copy on the bulletin board located at the Main Street entrance to the Los Angeles City Hall; one copy on the bulletin board located at the Main Street entrance to the Los Angeles City Hall East; and one copy on the bulletin board located at the Temple Street entrance to the Los Angeles County Hall of Records.

I hereby certify that this ordinance was passed by the Council of the City of Los Angeles, at its meeting of _____ APR 0 2 2013 _____.

JUNE LAGMAY, City Clerk,

By _____

                                    Deputy

Approved_____ APR 1 2 2013 _____

                                    _____

                                    Mayor

Approved as to Form and Legality

CARMEN A. TRUTANICH, City Attorney

By _____
          MICHAEL NAGLE
          Deputy City Attorney

Date _____ 11/13/12 _____

File No. _____ 12- 0920 _____